McKENNA v. DUNN et al.

(Supreme Court, Appellate Division, First Department.    March 6, 1908.)

INDEMNITY—CONSTRUCTION OF CONTRACT—EXTENT OF LIABILITY.

Defendants gave plaintiff a written contract of indemnity relieving plaintiff "of any responsibility covering your underwriting to the bonds" of a railroad company, "all of which we ourselves assume." In a letter addressed by plaintiff to defendants at the time they signed the contract of indemnity, he stated that, if they would indemnify him, they should be entitled to receive all bonds and stock which would come to him under the underwriting agreement, and that, if he was obliged to pay any sum by reason of that agreement, the bonds and stock should be first applied to the amount so paid, and the surplus, if any, should be paid to defendants, their nominees, or assigns. *Held*, that the letter and the contract must be read together, and defendants are liable for the deficit after applying the bonds and stock, although the letter makes no provision for such a contingency.

Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Charles F. McKenna against B. Sherwood Dunn and others. A demurrer to the complaint was sustained, and plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Wallace A. Kroyer, for appellant
Wilson B. Brice, for respondents.

SCOTT, J. The plaintiff appeals from an interlocutory judgment sustaining a demurrer to the complaint.

The complaint alleges that in January, 1903, the plaintiff, at the request of the defendant Dunn, subscribed to an underwriting agreement in aid of the Delaware & Northampton Railway Company, whereby he agreed to take bonds of that company to the extent of $10,000. He alleges that he did this in reliance upon a promise by Dunn that he would pay the subscription when it became due. When the time arrived, however, Dunn paid only $2,500 of the amount. A new agreement was thereupon entered into between the subscribers to the underwriting agreement and the trust company which had loaned money upon its security. This agreement recited the former agreement, and the fact that the railroad company was still indebted to the trust company in the sum of $105,000, and that, in order to raise money to pay off this debt, the underwriters agreed to pay, at the maturity of the loan, the several amounts subscribed by them, pledging meanwhile the bonds and stock which had been subscribed for under the first agreement. It is alleged that plaintiff signed this agreement at the request and for the benefit of the defendants, who gave him a written guarantee reading as follows:

"For valuable consideration, we, the undersigned, agree to relieve you of any responsibility covering your underwriting to the bonds of the Delaware & Northampton Railroad Company, which underwriting is dated March 6th, 1904, and matures six months from date. This indemnification is intended to

relieve you of any and every responsibility or obligation, all of which we ourselves assume."

When the loan matured, the defendants refused to pay the amount for which plaintiff had obligated himself, and he was sued by the trust company upon the subscription, and obliged to pay the amount thereof, with interests and costs, receiving from the trust company the bonds and stock held as collateral for the proportion of the debt which he had agreed to pay. It appears, further, that the railroad company failed to pay the interest on its bonds, and that a bondholders' committee was formed, with whom plaintiff deposited the bonds held by him; that the mortgage was foreclosed, and the property bought in by the committee who had resold it at a price which will return to the bondholders 50 per cent. of the face value of the bonds, and that the stock is valueless. The plaintiff offers to deliver to defendants the bonds and stock, or the proceeds upon payment of the amount of his advances, with interest. The complaint, in so far as above outlined, certainly states a good cause of action for damages. It alleges an agreement to indemnify plaintiff, its breach, and the damages resulting therefrom.

The defendants appear to base their plea of insufficiency upon a letter, recited in the complaint, which was addressed by plaintiff to defendants, at the time the latter signed their agreement of indemnity. This letter, after reciting the indemnity agreement, agreed on his part as follows:

"First. If you shall indemnify and hold me harmless from any and all responsibility and obligation under either of said underwriting agreements, or any renewals or extensions thereof, then you, or your nominees or assigns, shall be entitled to receive all the bonds and shares of stock which otherwise would be coming to me under the said underwriting agreements, or either of them.   Second. If I shall be required to pay any sum or sums of money under my subscription to said underwriting agreements, it is understood that all the bonds and stock held in connection with my said subscription shall be first applied to paying any sum or sums of money so disbursed by me, and the surplus, if any, from said securities, shall be paid to you or your nominees or assigns."

It is to be observed that in this letter only two contingencies are provided for: Either that the defendants shall make their indemnity good, or, if they fail to do so, that the bonds and stock will be worth at least as much as the amount plaintiff may be compelled to pay. The third contingency was not provided for, namely, that the defendants should fail to perform their agreement to indemnify plaintiff, and that the bonds and stock should prove to be of insufficient value to cover the amount of plaintiff's payments. As we understand the defendants' contention, it is that as plaintiff, in his letter to defendants, did not stipulate that, if this contingency occurred, he was to be paid the amount of his subscription upon surrender of the stock and bonds, or, in the alternative, the difference between the amount advanced and the value of the stock and bonds, the plaintiff is without any remedy, and must himself bear the loss. This contention loses sight of the fact that defendants' agree-

ment to indemnify the plaintiff and plaintiff's agreement contained in his letter must be read together, as parts of one contract. On the one hand, the defendants agreed in the broadest possible manner to hold plaintiff harmless. This necessarily carried with it the agreement that, if plaintiff lost anything by reason of having signed the subscription agreement, the defendants would make him whole. That is to say, that if he was compelled, as he was, to pay the subscription, and the stock and bonds proved to be, as they did, worth less than the amount· of the subscription, the defendants would make good the difference. All this is to be read in the defendants' agreement. It was unnecessary for plaintiff to restate the defendants' obligations in his letter to them, for that dealt only with the obligations which he assumed; that is, to deliver up the stock and bonds if defendants paid the subscription, or, in case the stock and bonds realized more than the amount paid by him, to pay over the surplus. By reading the two agreements together, and giving full effect to each, a complete contract is found to have been made, mutual in its obligations, reasonable, and equitable. To construe them as defendants seek to do would be to give to defendants all the profits, if any were realized, and to cast upon plaintiff the burden of bearing all the losses if any such arose. Such is not the construction to be adopted. It may be that upon the facts as stated in the complaint the damages to be recovered will be less than the amount claimed, but that does not concern us in this appeal. It is sufficient that plaintiff shows himself to be entitled to some damages.

The interlocutory judgment must be reversed, and the demurrer overruled, with costs in this court and the court below, with leave to the defendants to withdraw the demurrer and answer within 20 days upon payment of said costs. All concur, except PATTERSON, P. J., who dissents.